**SO ORDERED.**

**SIGNED this 13 day of February, 2020.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-00298-5-DMW |
| KEITH DOUGLAS MEDLIN | CHAPTER 13 |
| DEBTOR | |

### ORDER DENYING MOTION TO DISMISS AND
### ORDER OVERRULING OBJECTION TO CONFIRMATION OF PLAN

This matter comes on to be heard upon the Chapter 13 Plan filed by Keith Douglas Medlin ("Debtor") on July 23, 2019, the Objection to Confirmation of Plan filed by Wendy Oglesby ("Ms. Oglesby") on July 30, 2019, the Creditor's Motion to Dismiss filed by Ms. Oglesby on August 5, 2019 and the Debtor's Response to Motion to Dismiss filed by the Debtor on August 27, 2019. The basis of the objection is that the amount of the Debtor's noncontingent, liquidated, unsecured debt exceeds the amount allowed under 11 U.S.C. § 109(e) and disqualifies the Debtor from being eligible for Chapter 13. The court conducted a hearing in Raleigh, North Carolina on October 23, 2019. Cort I. Walker, Esq. appeared for the Debtor, and William E. Brewer Jr., Esq. appeared for Ms. Oglesby. Based upon the pleadings, the testimony of the Debtor and other evidence presented, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.  The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.      The Debtor and Ms. Oglesby (collectively, "Parties") were married in October 1990 and divorced in April 2015.  During the course of the marriage, the Debtor owned M&J Enterprises of Cary, LLC ("M&J").  M&J operated as a Monkey Joe's franchise.[1]  On February 26, 2008, M&J borrowed $555,000.00 pursuant to a United States Small Business Administration ("SBA") promissory note ("Note") funded by American Business Lending, Inc. ("ABL").[2]  The Parties guaranteed repayment of the Note, and the Minnie B. Dean Trust ("Trust") pledged real property ("Property") in Holden Beach, North Carolina as collateral for the Note.  Janet Dean Beabout ("Ms. Beabout") and Vivian Dean Humphrey ("Ms. Humphrey") purport to be beneficiaries under the Trust.

3.      M&J defaulted on the Note.  In early 2015, the Trust, ABL and the SBA entered into a settlement agreement whereby Ms. Beabout and Ms. Humphrey, individually and on behalf of the Trust, paid $160,000.00 toward the Note in exchange for the release of the lien on the Property.[3]  That settlement agreement did not release any other obligors from liability on the Note.

4.      The Parties executed a Property Settlement Contract ("Agreement")[4] on November 12, 2015, whereby the Debtor took all rights, title and interest in M&J and agreed to indemnify

---

[1] Monkey Joe's is a children's indoor recreational and entertainment center.
[2] Many of the court's findings of fact are based on documents filed with the court, including the Proof of Claim filed by the SBA and the Proof of Claim filed by Ms. Oglesby.  Ms. Oglesby attached to her Proof of Claim an Order Granting Plaintiff's Breach of Contract, Specific Performance and Attorney's Fees entered December 14, 2018 in the Wake County District Court, defined *infra* as the "State Court Order."
[3] Ms. Beabout and Ms. Humphrey are Ms. Oglesby's mother and aunt, respectively.  These details of the lump sum payment toward the Note are contained in the Agreement and the State Court Order discussed *infra*.
[4] Ms. Oglesby presented the Agreement to the court at the hearing on October 23, 2019.

Ms. Oglesby and hold her harmless from any liabilities of M&J.  In addition, Ms. Beabout and Ms. Humphrey, individually and on behalf of the Trust, executed a waiver and release in connection with the Parties' execution of the Agreement, whereby Ms. Beabout, Ms. Humphrey and the Trust waived and released any claims they may have against the Debtor, Ms. Oglesby or M&J relating to payment on the Note.

5. The Debtor closed the Monkey Joe's franchise in November 2015.  According to the payment history attached to the SBA's Proof of Claim, the SBA received no payments on the Note in 2016.  The SBA began garnishing a portion of Ms. Oglesby's wages in February 2017, and as of November 2018, the SBA had garnished $22,985.07 from Ms. Oglesby's earnings.  The SBA also garnished a portion of the Debtor's earnings in 2017, but the Debtor subsequently changed jobs, and the garnishments against his wages ceased.

6. Ms. Oglesby instituted an action in the Wake County District Court against the Debtor for breach of the Agreement, and on December 14, 2018, that court entered an order ("State Court Order") requiring the Debtor to pay the balance due on the Note in the amount of $97,150.09 no later than February 12, 2019.  The Wake County District Court noted that the SBA would continue garnishing a portion of Ms. Oglesby's wages until the Note was paid in full and ordered that the Debtor reimburse Ms. Oglesby for all garnished wages.  The court also ordered the Debtor to reimburse Ms. Oglesby for her attorney's fees in the amount of $16,000.00.

7. The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on January 24, 2019 ("Petition Date").  On the schedules of his liabilities filed on February 7, 2019, the Debtor listed unsecured debt totaling $278,167.16.  That amount includes the following listed debts:

    a. A debt owed to the SBA in the amount of $97,000.00; and

    b. A debt described as "marital debt" owed to Ms. Oglesby in the amount of $136,135.16.[5]

The Debtor did not classify these debts as contingent. The Debtor did not list any debt to Ms. Beabout, Ms. Humphrey or the Trust on his schedules.

  8. Ms. Oglesby filed a Proof of Claim ("Oglesby Claim") in the amount of $136,135.16 on March 29, 2019. The Oglesby Claim comprises a claim in the amount of $22,985.07 for the wages garnished by the SBA and a claim in the amount of $16,000.00 for the attorney's fees that the Debtor is required to pay to Ms. Oglesby pursuant to the State Court Order. It also includes a claim in the amount of $97,150.09 ("Indemnification Claim") for the balance due on the Note. In the Agreement the Debtor agreed to indemnify Ms. Oglesby, and the Wake County District Court ordered the Debtor to pay that amount to the SBA.

  9. On April 1, 2019, Ms. Beabout and Ms. Humphrey each filed a Proof of Claim in the amount of $82,500.00.[6] The Debtor has objected to those claims, and that objection remains pending. Whether or not these claims are allowed has no bearing on the determination of the Debtor's eligibility under Chapter 13, as the determination will turn on the Indemnification Claim of approximately $97,150.09.

  10. Ms. Oglesby asserts that the Debtor is not eligible to be a debtor, because "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent,

---

[5] This amount is calculated from the sum of the SBA garnish of $22,985.07, the State Court Order in the amount of $97,150.09 and the attorney's fees in the amount of $16,000.00 awarded by the State Court.

[6] The payment to the SBA was in the amount of $160,000.00, and it is unclear why the claims are for $82,500.00 instead of $80,000.00 each. The Proofs of Claim do not include any additional documentation regarding the basis for the claims, but on April 26, 2019, Ms. Beabout and Ms. Humphrey filed a Complaint against the Debtor, initiating Adversary Proceeding No. 19-00063-5-DMW. Ms. Beabout and Ms. Humphrey alleged that the Debtor owes them $160,000.00 for the funds they paid to ABL, and that the alleged debt is nondischargeable, because the Debtor obtained fraudulently the waivers and releases from Ms. Beabout and Ms. Humphrey. The court dismissed that adversary proceeding on December 16, 2019.

liquidated, unsecured debts of less than $394,725[7] . . . may be a debtor under chapter 13" of the United States Bankruptcy Code. 11 U.S.C. § 109(e). Ms. Oglesby seeks denial of confirmation of the Debtor's Chapter 13 Plan and dismissal of his bankruptcy case.

11. At the hearing, Ms. Oglesby presented an illustrative chart exhibit listing the claims scheduled by the Debtor and filed against the Debtor.[8] If the Debtor scheduled a debt in one amount but the creditor's Proof of Claim was for a different amount, Ms. Oglesby used the Proof of Claim amount in her calculations. Ms. Oglesby asserts that the Debtor's schedules and the Proofs of Claim filed against the Debtor show that the Debtor had noncontingent, liquidated, unsecured debts of $422,404.30 on the Petition Date.

12. Included in Ms. Oglesby's calculations were the claims of Ms. Beabout and Ms. Humphrey in the amount of $165,000.00. The court will determine the validity of those claims at a later date, and even if those claims are valid, they do not cause any change in the Chapter 13 eligibility determination by the court.

13. The Debtor asserts that the claims of Ms. Oglesby and the SBA "are duplicative because they arise out of the same debt obligation and they should not be stacked for purposes of a section 109(e) analysis." If the Debtor is correct, then he is eligible to be a Chapter 13 debtor. If he is not correct, then he cannot proceed under Chapter 13, and the case must be converted or dismissed.

14. The Debtor has not objected to the Oglesby Claim, and the court should not adjudicate its validity or amount in conjunction with its determination whether the Debtor exceeds

---

[7] This amount is the statutory limit that was in place as of the Petition Date. The limit increased to $419,275 on April 1, 2019.

[8] Ms. Oglesby also attached the chart to the Motion to Dismiss. Ms. Oglesby did not include the debt in the amount of $5,335.00 owed to the Debtor's counsel for filing fees and credit counseling fees advanced by counsel and for counsel's representation of the Debtor in this bankruptcy case.

the debt limit of § 109(e); however, the court agrees with the Debtor that the Indemnification Claim arises out of the same debt obligation as is owed to the SBA. The court now must determine if the Indemnification Claim is contingent or noncontingent.

15. If the Debtor were to pay the SBA in full, then the Indemnification Claim, which is based on the SBA debt and the Debtor's agreement to indemnify Ms. Oglesby from that debt, would not exist. If that portion of the Oglesby Claim is contingent, then it should not be included in the calculation of the Debtor's unsecured debts under § 109(e).

16. "A debt is noncontingent if all of the events necessary to give rise to liability for it take place prior to the filing of the petition." *In re Green*, 574 B.R. 570, 576 (Bankr. E.D.N.C. 2017) (quoting *In re Sappah*, No. 11-03129-8-SWH, 2012 Bankr. LEXIS 5698, at *4 (Bankr. E.D.N.C. Dec. 11, 2012)). A "contingent" debt, meanwhile, has been defined as:

> one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

*Brockenbrough v. Commissioner, IRS*, 61 B.R. 685, 686 (W.D. Va. 1986) (quoting *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980)). The Indemnification Claim may appear at first blush to be noncontingent, because Ms. Oglesby's right to payment has already been established by the Agreement, and she even obtained the State Court Order in her favor requiring the Debtor to pay the SBA in full; however, although liability exists, the Indemnification Claim remains dependent on an extrinsic event. That event is the failure of the Debtor to pay the SBA and requiring Ms. Oglesby to pay that debt instead, resulting in requiring the Debtor to pay her rather than the SBA for the debt. "[W]here an indemnification agreement is entered into prior to a bankruptcy filing, such an execution gives the indemnitee a contingent pre-petition claim." *In re*

*Bentley Funding Grp., LLC*, No. 00-13386, 2001 Bankr. LEXIS 2435, at *6 (Bankr. E.D. Va. Jan. 2, 2001) (quoting *In re Highland Group, Inc.*, 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992)).  That treatment is also consistent with North Carolina law, because "a cause of action on an obligation to indemnify normally accrues when the indemnitee suffers actual loss." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 180 N.C. App. 257, 267 (2006), *aff'd*, 658 S.E.2d 918 (N.C. 2008) (citing *Premier Corp. v. Economic Research Analysts, Inc.*, 578 F.2d 551, 553-54 (4th Cir. 1978)).

17.    The Indemnification Claim is a contingent claim.  Although the Debtor did not designate his debt to Ms. Oglesby as contingent on his schedules, the court is not precluded from examining the claim to make a legal determination of the nature of the claim, in order to ascertain whether the Debtor is within the limit set by § 109(e).  If the Oglesby Claim is reduced by the amount of the Indemnification Claim, then the Debtor's maximum total of noncontingent, liquidated, unsecured debts on the Petition Date was $325,254.21 which is calculated by deducting the Indemnification Claim amount of $97,150.09 from $422,404.30 which is the total amount of claims calculated by Ms. Oglesby. That amount is less than the $394,725.00 limit set by § 109(e), and the Debtor qualifies as a Chapter 13 debtor.  The Motion to Dismiss filed by Ms. Oglesby should be denied.  Ms. Oglesby also cited the debt limit of § 109(e) as grounds for denial of confirmation of the Debtor's Chapter 13 Plan, and that objection should be overruled; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1.    The Creditor's Motion to Dismiss filed by Ms. Oglesby be, and hereby is, denied;

2.    The Objection to Confirmation of Plan filed by Ms. Oglesby be, and hereby is, overruled; and

3. The court shall confirm the Debtor's Chapter 13 Plan by a separate Order.

END OF DOCUMENT